UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:12-cr-00085-jgm-1 |
| | : | |
| ROYAN WINT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

ORDER ON MOTION FOR ACQUITTAL AND MOTIONS FOR A NEW TRIAL
(Docs. 116, 139)

I.   Introduction

On June 25, 2014, a jury found Defendant Royan Wint guilty of both counts in the Superseding Indictment: (1) conspiring to distribute or possess with intent to distribute cocaine, oxycodone, or cocaine base in an amount of 28 grams or more, and (2) possession with intent to distribute cocaine, oxycodone, or cocaine base in an amount of 28 grams or more.  (Doc. 111.)

While represented by former trial counsel John Mabie, Wint moved for a new trial based on alleged sleeping jurors.  (Doc. 116.)  The Government opposed this motion.  (Doc. 117.)  Later, once represented by current counsel Elizabeth Mann, Wint moved for acquittal or, in the alternative, a new trial based on alleged ineffective assistance of counsel.  (Doc. 139.)  Mabie submitted an affidavit responding to the assertion he provided ineffective counsel.  (Doc. 142.)  The Government then opposed Wint's motion.  (Doc. 145.)  Wint did not reply to the Government's opposition.  For the following reasons, Wint's motion is denied.

II.  Background

Wint was originally indicted on June 27, 2012.  (Doc. 1.)  In the Second Superseding Indictment issued on August 14, 2013, the Government charged Wint with conspiracy to distribute and to possess with intent to distribute cocaine base, cocaine, and oxycodone (21 U.S.C. §§ 846,

841(a)(1), 841(b)(1)(B)) and possession with intent to distribute cocaine base, cocaine, and oxycodone (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B); 18 U.S.C. § 2).  (Doc. 50.)

Before trial, Wint moved to suppress all tangible evidence and statements.  (Doc. 32.)  On January 13, 2014, the Court held a hearing on the motion to suppress.  The hearing was continued, and a second hearing was held on January 29, 2014.  Wint testified at the second hearing.  The Court ultimately denied the motion to suppress.  (Doc. 80.)  Subsequently, Wint moved to allow his attorney, John Mabie, to withdraw.  (Doc. 96.)  Mabie was Wint's third attorney.  The Government opposed Wint's motion to withdraw.  (Doc. 97.)  The Court ultimately denied the motion to withdraw and Wint proceeded to trial with Mabie as counsel.  (Doc. 98.)

The Court held a trial from June 23, 2014 to June 25, 2014.  At trial the Government elicited testimony from several witnesses showing Wint possessed controlled substances.  Wayne Godfrey, a Vermont State Police ("VSP") trooper, testified he learned Wint had sold cocaine to Shauna Poole, and subsequently obtained a search warrant for Wint's home.  (Doc. 132, at 41-42.)  He testified he participated in the execution of the search warrant at 7:00 a.m. on May 22, 2012 and found cocaine, cocaine base, and pills in a purse and just under $12,000 in a closet.[1]  (Id. at 43-46.)  Wint was present in his home along with Duran Forester and Felicia Young.  (Id.)

Other testimony showed Wint admitted to conspiring with others to distribute cocaine, cocaine base, and oxycodone.  VSP Trooper Henry Alberico testified about interviews with Wint and Felicia Young on May 22, 2012.  (Id. at 102.)  He stated Wint admitted the cocaine and cocaine base found in his home were his and that he obtained them in Brooklyn.  (Id. at 104-05.)  He also stated Wint admitted he obtained oxycodone from a man called "White Boy" in Albany and gave

---

[1] Denise Gregory, a forensic chemist for the state of Vermont, testified the substances found in Wint's apartment included cocaine, cocaine base, and oxycodone weighing over 70 grams.  (Doc. 132, at 141, 152-54.)

those pills to Felicia Young to distribute in New Hampshire.  (Id. at 106.)  Finally, he stated Wint admitted the cash found in his home was obtained from narcotics sales and gambling.  (Id. at 107.)  VSP Trooper Casey Daniell also testified about interviews with Wint and Young on May 22, 2012.  He stated Wint advised he had suppliers in Bennington, Vermont; Springfield, Vermont; New York, New York; and Albany, New York.  (Doc. 133, at 171-72.)  He stated that Wint had Young sell drugs in New Hampshire.  (Id. at 173-74.)

Testimony corroborated Wint's admissions he conspired with others to possess and distribute narcotics.  Shauna Poole testified Wint supplied Mason Ingraham with cocaine and oxycodone in the spring of 2012, which Ingraham then distributed to locals.  (Doc. 132, at 161-72.)  Marybeth Barrett, a friend of Wint, testified Wint gave her oxycodone in 2012 which she delivered to others at his instruction.  (Doc. 133, at 10-11.)  Felicia Young, another friend of Wint, testified she distributed drugs with Wint.  (Id. at 47.)  She described the process by which Wint provided her oxycodone to sell and advised her on pricing pills.  (Id. at 60-62.)  She also described driving Wint around Bennington so that he could make drug deliveries.  (Id. at 80.)  She stated she saw cocaine, cocaine base, oxycodone, and ecstasy in Wint's possession.  (Id. at 67.)  She explained Wint picked up cocaine and cocaine base in New York City (Id. at 69-70) and oxycodone in Albany from "White Boy" (Id. at 83), and that she accompanied him on trips to pick up drugs at both locations.[2]  VSP

---

[2] Further testimony corroborated Young's story about her extensive telephone contact and travels with Wint.  VSP Trooper Scott Dunlap testified he downloaded information from Felicia Young's phone.  (Doc. 132, at 88.)  U.S. Cellular employee Kevin Chevalier matched that information to a phone in the name of "Denise McDonald."  (Id. at 125-26.)  Felicia Young later testified her phone was under the name "Denise McDonald," her boyfriend's mother's name.  (Doc. 133, at 63.)  Brian Tursi of AT&T Mobility testified regarding records of several phone numbers belonging to Royan Wint.  (Doc. 132, at 135-36.)  James Mattsson, an intelligence specialist at the U.S. Attorney's Office in Burlington, Vermont, explained that phone records indicated Wint and Felicia Young exchanged hundreds of text messages and calls in April and May of 2012.  (Doc. 133, at 156-57.)

Trooper Robert Zink, who searched Wint's car, testified he found a piece of paper containing the phrase "NY-Albany" and a series of times corresponding to a bus schedule, as well as "tool marks" consistent with someone tampering inside the car and indicative of attempts to conceal narcotics in a hidden compartment for transportation.  (Doc. 132, at 77-81.)

On June 25, 2014, a jury found Wint guilty on both counts.  Wint subsequently moved for a new trial on the basis that some jurors were sleeping during the trial.  (Doc. 116.)  Wint also renewed his motion for Mabie to withdraw.  (Doc. 118.)  On September 23, 2014, the Court held a status conference and hearing and granted Wint's motion for Mabie to withdraw as counsel and appointed Elizabeth Mann, Wint's fourth attorney.  (Doc. 127.)

On December 23, 2014, Wint filed the present motion for acquittal or, in the alternative, a new trial.  (Doc. 139.)  The Government moved unopposed for an affidavit from Mabie, Wint's trial counsel, in response to Wint's allegations of ineffective assistance of counsel (Doc. 140), and the Court granted the motion (Doc. 141).  Mabie filed his affidavit on February 12, 2015.  (Doc. 142.)  On March 23, 2015, the Government responded in opposition to Wint's motion for acquittal or a new trial.  (Doc. 145.)

III.	Discussion

    A.	Motion for a New Trial Based on Sleeping Jurors

Throughout his trial, Wint asserted jurors were sleeping.  See Doc. 133, at 91.  Wint's trial counsel brought this matter to the Court's attention twice during the trial.  See Doc. 133, at 91, 193.  Wint argues he is entitled to a new trial because to have one or more sleeping jurors during his trial was a deprivation of his jury trial and due process rights.  See United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000) ("If sleep by a juror makes it impossible for that juror to perform his or

her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury.").

The Court closely watched the jury during the trial (Doc. 133, at 92), and observed an alleged sleeping juror was awake, paying attention, and taking notes (Id. at 193-94).[3] Although some jurors may have closed their eyes briefly, there is no merit to Wint's contention jurors slept during the trial.

    B.       Motion for Acquittal

Wint moves for acquittal under Federal Rule of Criminal Procedure 29 on the basis that the jury's verdict was not supported by substantial evidence. A defendant challenging the sufficiency of the evidence supporting his conviction bears a "very heavy" burden. United States v. Bicaksiz, 194 F.3d 390, 398 (2d Cir. 1999). The jury's verdict must be sustained if "any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Wint's brief asserts that "[e]ven when viewed in the light most favorable to the prosecution, the evidence presented here is insufficient and a judgment of acquittal is appropriate." (Doc. 139, at 2.) Wint does not, however, provide any specific reasons the evidence was insufficient.

For a jury to convict a defendant of conspiracy, "the government must prove both the existence of the conspiracy alleged and the defendant's membership in it beyond a reasonable doubt." United States v. Chavez, 549 F.3d 119, 125 (2d Cir. 2008). "[I]n order to prove a defendant

---

[3] Even had a juror briefly fallen asleep, "a court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror." Freitag, 230 F.3d at 1023 (citations omitted); see also United States v. Barrett, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983) ("[E]ven if the juror in the present case is found to have been asleep during portions of the trial, a new trial may not be required if he did not miss essential portions of the trial and was able fairly to consider the case.").

guilty of conspiracy, the government need not show that he knew all of the details of the conspiracy, so long as he knew its general nature and extent." United States v. Rosa, 17 F.3d 1531, 1543 (2d Cir. 1994). For a jury to convict a defendant of possession with the intent to distribute, "the government [is] required to show that [defendant] knowingly and intentionally possessed [the controlled substance], and did so with the intent to distribute it." United States v. Rodriguez, 392 F.3d 539, 545 (2d Cir. 2004).

At trial, police investigators who executed a search warrant at Wint's home testified they found cocaine base, powder cocaine, oxycodone pills, $11,265 in cash, and a digital scale with white powder in Wint's bedroom. (Doc. 132, at 46, 55, 59, 60-65.) Felicia Young, Wint's co-conspirator, testified Wint gave her oxycodone to sell (Doc. 133, at 60-62, 84), and that she accompanied Wint when he bought and sold cocaine and cocaine base (Id. at 67.). Shauna Poole and Marybeth Barrett testified Wint supplied them and others with cocaine and oxycodone to distribute. (Doc. 132, at 161-72; Doc. 133, at 7-11.) Vermont State Troopers testified Wint admitted narcotics possession and distribution. (Id. at 104-07.)

Viewing the evidence presented at trial in the light most favorable to the government, "a rational jury could conclude beyond a reasonable doubt" that Wint was guilty of conspiracy to distribute illegal narcotics and possession of illegal narcotics. United States v. Eppolito, 543 F.3d 25, 45 (2d Cir. 2008).

        C.      Motion for New Trial Based on Ineffective Assistance of Counsel

Wint moves for a new trial based on alleged ineffective assistance of counsel. Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice.'" United States v. Snype, 441 F.3d 119,

140 (2d Cir. 2006) (quoting United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted)). A new trial is not warranted if the court is "satisfied that competent, satisfactory and sufficient evidence in th[e] record supports the jury's finding that this defendant is guilty beyond a reasonable doubt[.]" United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir.1992). "In making this assessment, the judge must examine the totality of the case. All the facts and circumstances must be taken into account," and "[t]here must be a real concern that an innocent person may have been convicted" before the "interest of justice" requires a new trial. Id. Granting a Rule 33 motion "[is] disfavored in this Circuit." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995).

The Court has discretion to hear an ineffective assistance of counsel claim prior to sentencing. See United States v. Brown, 623 F.3d 104, 113-14 (2d Cir. 2010) (finding it appropriate to hear an ineffective assistance of counsel claim prior to sentencing when the court had relieved defendant's counsel and appointed new counsel). Here, the allegedly ineffective attorney who represented Wint at trial has withdrawn and new counsel has been appointed. Trial counsel has filed an affidavit for the Court's consideration. It is therefore appropriate for the Court to evaluate trial counsel's representation at this time. See, e.g., United States v. Delarosa, No. 1:09-cr-64-20, 2012 WL 3778855, at *4 (D. Vt. Aug. 30, 2012), aff'd, 548 F. App'x 717 (2d Cir. 2013) (reviewing an ineffective assistance of counsel claim prior to judgment because "no competing considerations exist because the court has appointed substitute counsel").

To prove an ineffective assistance of counsel claim, a defendant must show: (1) counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

Under the first prong of Strickland, the defendant must establish his "counsel's performance fell beneath a standard of objective unreasonableness" based on "the facts of the particular case viewed as of the time of counsel's conduct." Delarosa, 2012 WL 3778855, at *4 (citations and quotations omitted). To meet this burden, a defendant must show more than a mere "risky, unorthodox or downright ill-advised" strategy. Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996). A court may only grant a new trial when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable[.]" Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 687.)

Under the second prong of Strickland, the defendant must show actual prejudice. A "reasonable probability" of a different result "is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "[T]he likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." Id. at 695.

Wint provides six reasons he believes he is entitled to a new trial. Each is unavailing.

### 1. Failure to Advise the Court of Defendant's Desire to Testify at Trial

First, Wint argues Mabie deprived him of the opportunity to testify at trial. Specifically, Wint argues competent counsel would have accepted the Court's offer to give Wint an additional night to decide whether to testify, despite the fact Wint had advised his attorney he would not testify on the final day of evidence.

Before the trial began, Wint equivocated on whether he would testify. At the conclusion of evidence, Wint informed Mabie he would not testify. (Doc. 133, at 198.) Wint had apparently waited until the last minute to make his decision, and had expressed the desire to wait until the next morning to decide. See id., at 199 ("Well [Wint] said he might want to make his decision tomorrow,

8

and I said I didn't know that the Court was going to give him until tomorrow."). The Court told Mabie evidence could remain open until the next morning, but Mabie did not request additional time for Wint to consider whether to testify. (Id. at 202-03.) Mabie then spoke with Wint again, and Wint confirmed he did not wish to testify. (Id. at 203.)

Wint now asserts he in fact wanted to testify the next morning, and that Mabie's performance was unreasonable because he failed to inform him of this opportunity. In his affidavit, Mabie contradicts Wint, explaining he informed Wint the Court would allow him to consider his options overnight. (Doc. 142, at ¶¶ 6-13.) Wint also contends the outcome of the trial would have been different had he testified because all evidence linking him to drug activity came from incredible witnesses, and his testimony would have discredited these witnesses. (Doc. 139, at 9-10.)

Wint's arguments are unavailing. Wint must demonstrate trial counsel failed to advise him of his right to testify or prevented him from testifying and his testimony would have altered the outcome of the trial. See Rega v. United States, 263 F.3d 18, 21 (2d Cir. 2001). First, Wint was advised of his right to testify and declined. Mabie spoke with Wint and confirmed he did not want to testify at the close of evidence. (Doc. 133, at 203.) Contrary to Wint's assertion, Mabie also informed Wint he could weigh whether to testify overnight, an option Wint declined. (Doc. 142, at ¶ 9-11.) Second, the Court has little reason to believe Wint's testimony would have changed the outcome of his trial. His testimony would have been contradicted by all preceding witnesses, and he would have been subject to impeachment upon cross-examination. Mabie had discussed the significant risks of testifying with Wint. (Doc. 142, at ¶ 6-8.) Furthermore, he had already shown himself to be an incredible witness. After he testified at his January 29, 2014 suppression hearing, the Court found his testimony regarding events less credible than testimony of VSP Troopers Daniell and Zink, both who testified at Wint's trial. (Doc. 80, at 1-2, 14.)

### 2. Failure to Adequately Advise Defendant of Options and Related Consequences

Second, Wint alleges Mabie failed to provide him an analysis of possible sentencing consequences. Wint claims he proceeded to trial on inadequate advice concerning sentencing outcomes stemming from a plea bargain versus a trial. (Doc. 139, at 11.) Mabie's affidavit contradicts Wint, as Mabie states he provided Wint with information about the sentencing and immigration consequences of conviction. (Doc. 142, at ¶¶ 14-24.) As Wint was aware, he faced a five-year mandatory minimum whether he was found guilty at trial or accepted a plea agreement. Accordingly, Wint is not entitled to a new trial on this basis.

### 3. Speedy Trial

Third, Wint asserts he was deprived of his speedy trial rights because his counsel, first Joyce Brenner, then Michael Shklar, and later Mabie, did not consult him before waiving his speedy trial rights. (Doc. 139, at 12.) The delays in Wint's trial, however, resulted largely from the withdrawal of attorneys Brenner and Shklar at Wint's request. Furthermore, Wint does not allege he suffered any prejudice due to delays. Accordingly, Wint's speedy trial rights were not violated.

### 4. Failure to Fully Advise the Defendant

Fourth, Wint argues his counsel failed to provide copies of filings and discovery materials, including the suppression motion filed by Brenner and a recorded police interview of Felicia Young. Wint was provided a transcript of the interview of Felicia Young, but argues this was inadequate because he could not verify its accuracy and could not evaluate statements with reference to her tone of voice. (Doc. 139, at 13-14.) Contrary to Wint's assertions, Mabie provided a record of communications of advice, plea offers, and discovery material to Wint. See Doc. 142-1 (an attachment collecting communications, plea offers, a list of discovery material, and other correspondence between Mabie and Wint). Wint received the transcript of the interview with

Felicia Young.  (Doc. 142, ¶ 30.)  The fact that Wint did not have access to the recording does not rise to the level of ineffective assistance of counsel.  The text of the transcript was sufficient to inform Wint of the contents of the interview.  Wint is not entitled to a new trial on this ground because he received all relevant materials.

        5.      <u>Failure to Fully Challenge Search Warrants</u>

Fifth, Wint argues Mabie failed to seek a <u>Franks</u> hearing in connection with the finding of probable cause challenged at the suppression hearing.  (Doc. 139, at 14.)  As Mabie determined, however, no basis existed for a <u>Franks</u> hearing.  (Doc. 142, ¶ 31.)  Wint had a suppression hearing, a trial, and several opportunities for briefing.  He has made no "allegations of deliberate falsehood or of reckless disregard for the truth" in the warrant materials, and he has not made "an offer of proof" of falsehood in the warrant materials.  <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).

        6.      <u>Failure to Conduct Basic Pretrial Investigation, Issue Subpoenas, and be an Advocate</u>

Sixth, Wint argues Mabie was ineffective to the extent he failed to interview the Government's witnesses prior to trial and failed to procure witnesses who could explain his possession of cash the Government implied at trial was unlawful drug proceeds.  (Doc. 139, at 14-15.)  As Mabie explains in his affidavit, he considered issuing subpoenas but could not identify useful or credible information he could have sought and was not permitted to speak to Felicia Young, who was represented by counsel.  (Doc. 142, ¶ 34.)  Wint also contends Mabie should have presented witnesses to establish a legitimate source of the cash found in Wint's apartment.  Mabie explains that the family members Wint recommended were nonresponsive or incredible, Wint had at an earlier stage not challenged the forfeiture of his bail due to an absence of a legitimate basis for those funds, and Wint's possession of nearly $12,000 in small bills was inconsistent with receiving a check as part of a legal settlement.  (<u>Id.</u> ¶¶ 37-38.)  Finally, proposed witness Mason Ingraham was

11

not likely to be helpful, considering he had given damaging statements to the police which were available to impeach any alternative testimony he might give. (Id. ¶ 39.) Even if the Court had reason to believe testimony from these witnesses would have benefitted Wint, Mabie's decision to refrain from developing them was within his discretion to control trial strategy. See, e.g., Tippins, 77 F.3d at 686 ("[I]n case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised.").

IV.     Conclusion

Based on the foregoing, Wint's motion for acquittal (Doc. 139) and motions for a new trial (Docs. 116, 139) are DENIED.

A sentencing hearing will be scheduled for Monday, September 28, 2015, at 10:00 a.m. in Brattleboro, Vermont.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 21st day of May, 2015.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge